**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **No. 23-cr-190-02 (ABJ)** |
| **D'MARRELL MITCHELL** | |

**D'MARRELL MITCHELL'S OPPOSITION**
**TO GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE**
**PURSUANT TO FEDERAL RULES OF EVIDENCE 404(b) AND 609**

Pending before this Court is the government's Notice of Intent to Introduce Evidence Pursuant to Federal Rules of Evidence 404(b) and 609. *See* Gov't Mot., ECF No. 181. The Court should deny the government's motion as to Mr. Mitchell and exclude the use of the proposed conduct at trial because (1) it consists only of propensity evidence that is not admissible under Rule 404(b), and (2) any probative value to this evidence is outweighed by its prejudicial effect, requiring exclusion under Rule 403. The Court should also deny the government's request to admit prior offenses to impeach Mr. Mitchell under Rule 609 because, similarly, the prejudicial effect outweighs any probative value.

**FACTUAL BACKGROUND**

Mr. Mitchell is charged in fifteen counts of a twenty-one-count Indictment, ECF No. 181, with offenses arising out of nineteen alleged robberies. Count One alleges a single robbery conspiracy. Count Two alleges a drug distribution conspiracy. The remaining counts are either individual counts of robbery or using, carrying, possessing, and brandishing a firearm in furtherance of a crime of violence or drug trafficking offense. Mr. Mitchell is charged in both conspiracies, eleven of the robberies and two firearm counts.

The Indictment alleges that between May 2020 and May 2021, all seven defendants, including Mr. Mitchell, were engaged in a conspiracy to commit robberies of pharmacies and cell phone stores.

## ARGUMENT

**I.    Because the evidence proffered by the Government fails both prongs of analysis under Rule 404(b), the Court should deny the Government's motion to admit prior bad acts.**

Under Rule 404, evidence of prior acts is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Instead, such evidence may only be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). As the Supreme Court has stated, "introduction of evidence of a defendant's prior crimes risks significant prejudice." *Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998); *see also Michelson v. United States*, 335 U.S. 469, 476 (1948) ("[Prior acts are] said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge."). The rule against introducing character evidence, also known as "propensity evidence," is not based on the idea that the evidence of a defendant's character is irrelevant. It is instead based "on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds." *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985).

Due to significant prejudicial risks, the D.C. Circuit requires a two-step analysis when determining whether prior acts are admissible under Rule 404(b). *See United States v. Washington*, 969 F.2d 1073, 1080 (D.C. Cir. 1992) (noting that the two-step analysis is "well established" in this circuit). First, the court must determine whether the evidence is "probative of

some material issue other than character." *Id*. "[S]uch evidence is *never* admissible unless it is

'necessary' to establish a material fact such as 'motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident.'" *United States v. Shelton*, 628 F.2d 54,

56 (D.C. Cir. 1980) (emphasis added) (footnote omitted). The government bears the burden of

demonstrating the relevance of the "prior bad acts" it seeks to have admitted. *See United States v.*

*Hudson*, 843 F.2d 1062, 1066 (7th Cir. 1988); *United States v. Hogue*, 827 F.2d 660, 662 (10th

Cir. 1987).

   Second, if the court finds the evidence relevant to a non-character issue, it will still be

excluded if it is inadmissible under any other "general strictures limiting admissibility." *United*

*States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1989). Most important among these strictures is

Rule 403, which bars admission of relevant evidence if its probative value "is substantially

outweighed" by a danger of "unfair prejudice, confusing the issues, misleading the jury . . . or

needlessly presenting cumulative evidence." *Washington*, 969 F.2d at 1081; Fed. R. Evid. 403.

Because the proffered evidence fails both steps of the analysis, the Court should deny the

government's motion to admit Mr. Mitchell's prior acts and convictions.

> **A. The Midlothian robbery, Mr. Mitchell's prior thefts, and the listed communications should be excluded because they are not probative of any permitted purpose under Rule 404(b), thus constitute impermissible propensity evidence.**
>
> > **1. The Midlothian robbery and Mr. Mitchell's prior theft convictions are inadmissible under Rule 404(b).**

The government asserts that Mr. Mitchell's alleged involvement in a robbery in

Midlothian, Virginia and two prior theft convictions are relevant to proving his identity,

knowledge, and intent in the present case. Gov't Mot. at 20-22. "The threshold inquiry a court

must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is

probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681,

686 (1988). This rule is based on the presumption of innocence and the recognition that "[i]t is fundamental to American jurisprudence that 'a defendant must be tried for what he did, not for who he is.'" *United States v. Foskey*, 636 F.2d 517, 523 (D.C. Cir. 1980) (internal citation omitted). "The exclusion of bad acts evidence is founded not on a belief that the evidence is irrelevant, but rather on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds." *Daniels*, 770 F.2d at 1116.

The D.C. Circuit has "repeatedly emphasized the narrow scope of the 'bad acts' evidence exceptions under Rule 404(b) . . . and the continuing applicability of the Rule 403 limitation on unduly prejudicial evidence even if an exception is satisfied." *United States v. Nicely*, 922 F.2d 850, 856 (D.C. Cir. 1991). To satisfy Rule 404(b), the evidence of other crimes or acts must be (a) relevant under Federal Rule of Evidence 401, (b) related to "a matter in issue other than the defendant's character or propensity to commit crime," and (c) "sufficient to support a jury finding that the defendant committed the other crime or act." *United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000).

Here, the proffered evidence of the Midlothian robbery and Mr. Mitchell's prior theft convictions is not admissible pursuant to Rule 404(b) because it is irrelevant to any material issue other than propensity. The government has failed to show how this evidence will go toward permissible purposes, rather than merely being used by the jury to infer that because Mr. Mitchell committed thefts in the past and may have been involved in the Midlothian robbery, he is more likely to have committed the alleged robberies in this case. *See United States v. Caldwell*, 760 F.3d 267, 281 (3d Cir. 2014) (finding that government failed to articulate a

"logical chain of inferences showing *how* [defendant's] prior possession of a firearm was relevant to show his knowledge.").

First, the government offers *identity* as a reason to admit the other acts evidence, arguing that courts routinely allow proof of identity to come in the form of *modus operandi*. Gov't Mot. at 20. Because, they argue, the prior and charged offenses are so "strikingly similar," Mr. Mitchell must have had a hand in both. *Id.* (quoting *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989)). The D.C. Circuit has affirmed the admission of evidence of a prior robbery as relevant to identity for the charged robbery when the facts of the uncharged robbery were so strikingly similar, that it would be reasonable for someone to make the connection that the same person committed both offenses. In *United States v. Lawson*, both robberies "were executed by a taller man wielding a distinctive silver-hammered handgun and a shorter man who collected money from the tellers, and the taller individual appeared to wear the same clothes during both crimes." 410 F.3d 735, 741 (D.C. Cir. 2005).

Here, there are no such distinctive and identifying similarities between the uncharged Midlothian robbery and the robberies alleged here. The number of participants in the robberies are not the same, the vehicles are not the same, and the clothing identified by the government – black pants and a head covering (which as described in the June 8 and 9 robberies was a black face covering) – are not so distinct or unusual to lead someone to believe that the same individuals must have committed both the Midlothian robbery and robberies alleged in this case. There are no distinctive characteristics like the "silver-hammered handgun" described in *Lawson*. And there are no allegations that the individuals are wearing the same clothes during both crimes. The presence of black jeans and a black face covering are too common to create a *modus operandi*.

The main similarity that the government can point to between Midlothian and some of the charged robberies is that they both involve pharmacies and the theft of drugs. Gov't Mot. at 20. In fact, there are significant and relevant differences between the various charged robberies themselves and the Midlothian robbery, in that some included brandishing a firearm and the Midlothian robbery did not. Gov't Mot. at 3. Other circuits have found that for conduct to be characterized as *modus operandi*, it must be "so unusual and distinctive as to be like a signature." *United States v. Pisari*, 636 F.2d 855, 858 (1st Cir. 1981) (quoting C.T. McCormick, *Evidence* § 190, at 449 (1972)). Importantly, a pattern "so generic" cannot establish *modus operandi*. *United States v. Thomas*, 321 F.3d 627, 635 (7th Cir. 2003). In *Thomas*, the purported "signature," which was ruled too generic to constitute *modus operandi*, was a defendant in possession of contraband who, upon seeing police at night, drops or hides the contraband before running. *Id.* at 635. The similarities between the Midlothian robbery and the alleged robberies here are too generic to constitute a signature and it should not be admitted to prove identity.[1]

Similarly, the government seeks to introduce Mr. Mitchell's 2016 and 2017 thefts to prove his identity in the charged robberies. The government states that the fact that Blount and Mitchell have committed "other spree-style robberies" across multiple jurisdictions tends to show that they are the individuals who committed the robberies here. Gov't Mot. at 21. Specifically, the government points to Mr. Mitchell's 2016 thefts of Apple products at AT&T, T-Mobile, and Best Buy stores, where Mr. Mitchell pushed a store owner and fled in a vehicle, as

---

[1] Evidence must not only be relevant to identity, but identity must be an issue in dispute. *United States v. Scott*, 677 F.3d 72, 81 (2d Cir. 2012). "It is well settled that, where identity is not in issue, it is improper to admit evidence of other crimes on the theory of proving identity." *Lovely v. United States*, 169 F.2d 386, 391 (4th Cir. 1948). Because the defense may choose not to dispute identity in the present case, the evidence cannot be admitted until identity becomes an issue in dispute.

evidence of identity to the present case. Like the Midlothian robbery, there is nothing distinctive about these thefts to constitute *modus operandi*, and nothing to suggest that the charged thefts proceeded in similar fashions. The 2016 and 2017 thefts do not include the "distinctive" jumping over the counter that the government points to in Midlothian. Mr. Mitchell did not grab an employee and there was no firearm brandished. The charged robberies alleged that the coconspirators would "often either brandish a firearm or gesture with their hands in a way that suggested the presence of a firearm under their clothing." Indictment at 3. That is not similar to Mr. Mitchell's 2016 and 2017 thefts. Gov't Mot. at 11. In fact, the meaningful differences between these cell phone thefts and the charged robberies push back against the suggestion that Mr. Mitchell has a *modus operandi* "signature" at all. And even if Mr. Mitchell's 2016 and 2017 thefts were like the charged robberies, any purported similarities that the government points to are too "generic" to constitute a *modus operandi* "signature." Therefore, they cannot be admitted to prove Mr. Mitchell's identity in the present case.

Second, the government asserts that evidence of the Midlothian robbery and Mr. Mitchell's prior thefts is relevant because it proves that he has *knowledge* of "how to commit these types of robberies." Gov't Mot. at 21. There is nothing that supports the suggestion that knowledge of prior robberies and thefts is relevant to knowledge of the present conspiracy.

Courts allow evidence of other acts to prove "knowledge" insofar as it relates to the defendant's mental state to commit a specific intent crime. *See United States v. Luster*, 480 F.3d 551, 557 (7th Cir. 2007) (allowing evidence of pre-conspiracy sale because it showed defendant's "specific intent to join the conspiracy"); *United States v. Lewis*, 110 F.3d 417, 420 (7th Cir. 1997) ("[Defendant] was charged with a specific intent crime, and the admission of other crimes evidence for the limited purpose of proving knowledge or intent was proper.").

Previously, the D.C. Circuit barred the introduction of evidence of a defendant's previous gun possession because it did not make it "any more likely that he knowingly possessed a gun this time." *United States v. Linare*s, 367 F.3d 941, 946 (D.C. Cir. 2004).

Here, it may be true that Mr. Mitchell's prior theft convictions make him more likely to know "how to commit these types of robberies." Gov't Mot. at 21. But, like the defendant whose prior gun possession has no bearing on whether he knowingly possessed a firearm, it does not make Mr. Mitchell more likely to "knowingly" obstruct commerce by robbery or "knowingly" distribute substances. *See Linares*, 367 F.3d at 946; Indictment at 2, 5. Thus, Mr. Mitchell's prior robberies are not relevant to proving the requisite mental state under the indictment.

Lastly, the government offers evidence pertaining to the Midlothian robbery Mr. Mitchell's prior thefts to prove his *intent* to distribute the fruits of the present robberies. Gov't Mot at 21-22. The government asserts that the uncharged Midlothian robbery is relevant because it "tends to suggest distribution given the sheer number of stolen narcotics." Gov't Mot. at 21. Similarly, the government asserts that Mr. Mitchell's robberies of cellphone stores are relevant because he "presumably had some means of selling those products, as he did here." Gov't Mot. at 22. It is possible that if the prior robberies contained evidence pertaining to distribution of stolen goods, they would be relevant to the present case. *See U.S. v. Clarke*, 24 F.3d 257, 266 (D.C. Cir. 1994) (upholding the inclusion of prior drug distribution as a relevant other act in a drug distribution case). But the government offers no such evidence for the prior cases offered here outside of noting the number of items stolen. Just the opposite, the government infers intent to distribute drugs in the past from alleged sale or distribution in the present case. Gov't Mot. at 22. This inference is impermissible. Therefore, because it offers no evidence of intent to

distribute the fruits of the past robberies, the evidence is not relevant to Mr. Mitchell's intent to distribute the fruits of the present robberies.

The Court should reject the government's invitation to admit what amounts to bad character evidence and exclude evidence of the Midlothian robbery and Mr. Mitchell's prior thefts pursuant to Rule 404(b) because the government has not met its burden to show that his prior robberies are probative of identity, knowledge, or intent. Because they are not probative of identity, knowledge, or intent, the prior robberies serve no purpose other than to prejudice the jury into thinking that because Mr. Mitchell committed past robberies he is more likely to commit the present ones.

**2. Evidence of communications regarding additional targets and sale of narcotics and cellphones cannot be admitted under Rule 404(b).**

The government has not explained way the messages and other electronic evidence is admissible under Rule 404(b), but instead specifically states that the evidence is "intrinsic." Gov't Mot. at 24. When evidence is deemed to be "intrinsic" to the crime charged, it is not evidence of "other" acts and thus outside the scope of Rule 404(b). *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011). The question of whether arguably intrinsic evidence is admissible or relevant is properly addressed during trial as the government seeks to admit such evidence. The government prematurely and improperly seeks a ruling to admit such evidence under a rule that is not applicable.

Additionally, even if the government were seeking to introduce communications and other electronic evidence under Rule 404(b), sufficient notice of what evidence the government specifically intends to introduce has not been provided. The government must "provide reasonable notice of *any* such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it." Fed. R. Evid. 404(b)(3)(emphasis added).

Here, the government has failed to provide reasonable notice of what it seeks to introduce. The government's statement that there are some communications and other digital evidence is not sufficient notice. The government must specifically identify all of the evidence it intends to introduce under Rule 404(b). It is the government's burden to provide notice. It is not defense counsel's job to guess what the government intends to use. And most importantly, there are no communications provided in the three samples in the government's notice that come from Mr. Mitchell. All the government identifies is that Mr. Mitchell allegedly received three images, No "exchange" of messages by Mr. Mitchell have been noticed by the government.

Such notice is not notice at all and is insufficient to permit the admission of this evidence under Rule 404(b). Mr. Mitchell has no fair opportunity to meet the evidence because the defense does not have a complete picture of what the evidence entails. Additionally, there is nothing linking Ms. Gause's conduct to Mr. Mitchell, yet it nevertheless is attributed to him. Absent this, even under the "flexible" reasonableness standard concerning fair notice under Rule 404(b), the government has not provided the complete set of digital evidence necessary to establish their motion as reasonable notice.

**B. Even if the Court finds the properly noticed prior acts to be relevant for a non-character issue, Rule 403 precludes admission.**

Even if the evidence at issue was offered for a legitimate, non-propensity purpose under Rule 404(b), it must be excluded pursuant to Rule 403 because its probative value is "substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. For the purposes of Rule 403, "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v.*

10

*United States*, 519 U.S. 172, 180 (1997). Courts should also exclude "other acts" evidence pursuant to Rule 403 if its introduction will create a "trial within a trial," *United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984), or if the government is likely to spend more time "dealing with alleged wrongful conduct not covered by the indictment than . . . dealing with the incidents" for which the defendant is charged. *United States v. Jones*, 570 F.2d 765, 769 (8th Cir. 1978); *see also United States v. Dennis*, 625 F.2d 782, 796-97 (8th Cir. 1980) ("Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues.").

The D.C. Circuit has recognized that there are "unique dangers of unfair prejudice associated with evidence of other bad acts," *United States v. Lavelle*, 751 F.2d 1266, 1275 (D.C. Cir. 1985), and that such evidence creates "enormous danger of prejudice to the defendant" because "juries are prone to draw illogical and incorrect inferences from such evidence." *Shelton*, 628 F.2d at 56; *see also Bowie*, 232 F.3d at 931 ("Evidence of other crimes or acts having a legitimate nonpropensity purpose undoubtedly may contain the seeds of a forbidden propensity inference. Recognizing this possibility, we have consistently stated that Rule 403 may bar evidence otherwise admissible under Rule 404(b).").

The de minimis possible probative value of the proffered evidence stands in stark contrast to the severe prejudicial impact the offenses would have on the jury. *See Linares*, 367 F.3d at 945 ("The danger of undue prejudice is far from theoretical. 'That juries treat prior convictions as highly probative has been confirmed by empirical investigations.'" (citation omitted)). As a result, rather than try Mr. Mitchell for *what* he allegedly did in this case, the jury will try him for *who* the government wants them to believe he is. *See id.* ("[A] concomitant of the presumption of innocence is that a defendant must be tried for what he did, not for who he is.") (internal

quotation marks and citations omitted). This Circuit has recognized that the greater the similarity between the other crimes evidence and the offense on trial, the more likely the jury will misuse the evidence. *United States v. Manner*, 887 F.2d 317, 323 (D.C. Cir. 1989).

The Midlothian robbery and Mr. Mitchell's prior thefts share some similarities with the alleged robberies in this case, specifically they involve pharmacies and phones stores. While not involving sufficient overlap and unique similarities to establish a *modus operandi*, they are similar enough to create unfair prejudice. The similar types of stores are sufficient to cause a jury to assume if someone stole from a phone store before, they did it again. That is the exact type of prejudice that the Court must avoid.

Additionally, allowing the introduction of the Midlothian robbery will unquestionably place the Court in the undesirable position of conducting a trial within a trial. This case already involves multiple robberies and will take weeks to try. Adding another, uncharged robbery, does nothing to advance the government's proof, but instead creates confusion and adds unnecessary and unduly prejudicial evidence. Asking the jury to parse out the Midlothian robbery from the rest, as uncharged conduct that can only be used for identity or *modus operandi* is unworkable and will undoubtedly result in the jury using the robbery for an improper purpose.

Even if marginally probative, the risk that the evidence would be used for a prohibited reason outweighs any probative value. Such evidence will unfairly taint Mr. Mitchell's character and, based on this tainted character, the jury will believe that "if he [robbed a store] before he probably did so this time." *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967).

Even with a limiting instruction, there exists a grave danger that jurors will have a difficult time resisting the natural human impulse to make the impermissible inference that someone who previously stole from a store must have also robbed the stores at issue. That

inference is the very inference Rule 403 was intended to prevent. Given the nature of the evidence that the government seeks to introduce, the inevitable prejudicial impact substantially outweighs any probative value the evidence might have regarding the issue of guilt. Thus, even if the Court were to find that the proffered evidence passed the test of Rule 404(b), it should be excluded under Rule 403.

## II.    The prejudicial effect from admitting Mr. Mitchell's prior convictions would outweigh the probative value in violation of Rule 609.

The Court should deny the government's motion to admit Mr. Mitchell's prior convictions to impeach Mr. Mitchell if he were to testify. Impeaching a witness with a prior felony conviction is not a given. Rule 609(a)(1)(B) limits the use of prior convictions to impeachment of "a witness's character for truthfulness." Fed. R. Evid. 609(a). For regular witnesses (cases in which the witness is not a defendant), Rule 609 requires the district court to consider whether a prior felony's probative value is substantially outweighed by unfair prejudice, confusing the issues, and the like. *See* Fed. R. Evid. 609(a)(1)(A) (requiring Rule 403 analysis). For criminal defendants, however, the standard is more stringent, forbidding admission if prejudicial effect of the conviction "merely outweighs" its probative value. 4-609 Weinstein's Fed. Evid. § 609.05[3][a] (2019) (emphasis added); *see also* Fed. R. Evid. 609(a)(1)(B) (omitting the word "substantial").

This more stringent standard exists because "a jury is more likely to use a prior conviction against the defendant as propensity than it would when faced with a government witness's prior conviction." 4-609 Weinstein's Fed. Evid. § 609.05[3][a] (2019); *see also United States v. Tse*, 375 F.3d 148, 163 (1st Cir. 2004) ("These distinctions—'substantially outweighs' versus 'outweighs,' and 'unfair prejudice' versus 'prejudicial effect'—support the assertion of the *Weinstein* treatise . . . [and recognize] there is a heightened risk that a jury will use evidence

13

of a prior conviction of the accused to draw an impermissible propensity inference[.]"). To guard against this impermissible inference, the government is compelled to show that a prior conviction's probative value outweighs its prejudice to the defendant. *See United States v. Smith*, 551 F.2d 348, 361 (D.C. Cir. 1976) ("[Rule 609] shift[s] to the prosecution the burden of demonstrating that the probative value on the issue of credibility outweighs prejudicial effect to the defendant.").

This Circuit has emphasized that "evidence of prior criminal activity would impermissibly lead juries to discredit witnesses because they are 'bad men,' rather than because they are biased or not credible." *United States v. Tucker*, 12 F.4th 804, 823 (D.C. Cir. 2021) (quoting *United States v. Fox*, 473 F.2d 131, 135 (D.C. Cir. 1972)). The D.C. Circuit considers the following factors in determining whether the probative value of a prior conviction outweighs its prejudicial effects: 1) the nature of the crime, 2) the time of conviction, 3) the similarity of the past crime to the charged crime, 4) the importance of the defendant's testimony, and 5) the degree to which the defendant's credibility is central to the case. *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980). Here, the government has the burden of convincing this Court that the probative value of Mr. Mitchell's prior convictions outweighs any prejudice to him, *United States v. Lipscomb*, 702 F.2d 1049, 1051 (D.C. Cir. 1983) (en banc), and it has failed to do so.

First, insofar as the government seeks to introduce prior convictions related to robberies or thefts, they should be barred. As a general rule, convictions which are for the same crime should be admitted "sparingly" because of their enhanced potential to prejudice a jury. *Gordon*, 383 F.2d at 940. Simply put, the ability of Mr. Mitchell's prior robbery conviction to prejudice a jury is so high that it outweighs its probative value. Additionally, the government has not

presented details as to the importance of Mr. Mitchell's testimony or the degree to which his credibility is central to the case, failing to consider the fourth or fifth factors of the above test. It's unclear how Mr. Mitchell's robbery and theft convictions are relevant other than to prejudice the jury. This is the very purpose of the restraints outlined by Rules 609 and 403.

As it relates to Mr. Mitchell's prior convictions for forgery and false identity, they occurred too remote in time to be relevant to the present case. Mr. Mitchell's forgery and false identity convictions are nearly 10 and 13 years old respectively. When convictions are over ten years old, they should be admitted only very rarely and in exceptional circumstances. *Zinman v. Black & Decker (U.S.), Inc.,* 983 F.2d 431 (2nd Cir. 1993).

The government points to Rule 609(a)(2) to argue that the evidence must be admitted because the crime required proving a dishonest act. Gov't Mot. at 28. In essence, the Court must weigh the presumption against admitting old convictions against the presumption in favor of including prior convictions that included a dishonest act. Importantly, none of the cases arguing in favor of the limitation on the inclusion of old convictions caveat their discussion to exclude prior convictions involving a dishonest act. *See Zinman,* 983 F.2d 431; *United States v. Sims*, 588 F.2d 1145 (6th Cir. 1978) (seeking summarily to bar prior convictions greater than 10 years old). In fact, the 6th Circuit undertook a survey of the legislative history of Rule 609 and concluded that there exists a "basic distrust in the probative value of convictions more than ten years old when evidence of such convictions is used to impeach the credibility of a witness." *Sims*, 588 F.2d at 1147. Because the forgery and false identity convictions are being admitted to shed light on Mr. Mitchell's credibility and we distrust the value of convictions for this very reason when they are outdated, the prior convictions should not be admitted to impeach Mr. Mitchell.

Consistent with Rule 609 and this circuit's case law, Mr. Mitchell's prior convictions should be excluded. Even if the Court attempts to abate the prejudice with an appropriate cautionary instruction to the jury, that instruction would not be enough. Telling a jury only to consider the defendant's prior conviction on the issue of credibility, not on guilt, requires the jury "to perform 'a mental gymnastic'" beyond their power. *United States v. Holland*, 41 F. Supp. 3d, 82, 95 (D.D.C. 2014) (quoting *Lipscomb*, 702 F.2d at 1062). Therefore, the surest means of safeguarding Mr. Mitchell's right to a fair trial is to exclude this prejudicial evidence all together, dispensing with the need to provide a limiting instruction.[2]

## CONCLUSION

For the reasons set forth above, and such others as may be presented at a hearing on this motion, Mr. Mitchell respectfully asks the Court to deny the government's motion to admit prior acts under both Rule 404(b) and 609.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

*/s/ Diane Shrewsbury*
DIANE SHREWSBURY
BENJAMIN SCHIFFELBEIN
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

---

[2] If the Court decides to admit the prior convictions for impeachment purposes, the Court should limit cross-examination "to the essential facts rather than the surrounding details of the conviction." *United States v. Baylor*, 97 F.3d 542, 544 (D.C. Cir. 1996) (internal citation omitted).