**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 23-cr-190 (ABJ)** |
| **ASHLEY GAUSE, et al.,** | : | |
| | : | |
| **DEFENDANTS.** | : | |

**GOVERNMENT'S SECOND SUPPLEMENT IN OPPOSITION TO**
**DEFENDANTS' MOTION TO SUPPRESS CELLPHONE EVIDENCE**

The United States of America submits this second supplement in response to defendant D'Marrell Mitchell's supplement to his motion to suppress cellphone evidence (ECF No. 245)[1], filed on August 28, 2025. Following a lengthy evidentiary hearing, the defendants expanded the scope of their earlier argument regarding the FBI's review the digital extraction of defendant Ashley Gause's cellphone, continue to argue that the FBI waited too long to obtain the D.C. search warrant despite the Anne Arundel search warrant, and advance a novel argument regarding the validity of the search warrant based on the inclusion of an inaccurate statement. All of the defense arguments fail. The government contends that: (1) the FBI was authorized to search the cellphones and the extraction under the Anne Arundel search warrant; (2) the Fourth Amendment is the incorrect vehicle to analyze return of property lawfully seized pursuant to a warrant, as was the case here; and (3) the defense has failed to make the requisite showing under *Franks* to justify a further evidentiary hearing, much less suppression.

---

[1] Defendant Mitchell filed his supplement on August 28, 2025, raising multiple issues that implicate defendant Ashley Gause's cellphone and the extraction of her cellphone (ECF No. 245). On August 29, 2025, defendant Gause joined that motion in a two-page filing (ECF No. 249).

For the following reasons, the government requests that the Court deny the defendants' motion to suppress cellphone evidence and vacate the September 2, 2025 hearing.

## BACKGROUND[2]

On June 13, 2025, defendant Mitchell moved to suppress evidence obtained pursuant to a search warrant for four cellphones (ECF No. 168), which was later joined by defendant Gause (ECF No. 172). On June 27, 2025, the government filed its opposition to that motion (ECF No. 190), and on July 7, 2025, defendant Mitchell filed his reply (ECF No. 200). At the pretrial conference on August 20, 2025, the Court denied in part the motion, holding that the cellphone search warrant obtained in D.C. was supported by probable cause. The Court reserved ruling on whether there was impermissible delay in obtaining the D.C. search warrant and asked that the government provide a witness to testify as to the FBI's diligence in obtaining the search warrant.

On August 26, 2025, the government called as a witness former Supervisory Special Agent Timothy Van Dyk[3] to testify as to the narrow issue of the FBI's diligence in obtaining the D.C. cellphone search warrant. Prior to Agent Van Dyk's testimony, the government filed a supplement to its opposition detailing information learned during witness preparation for the hearing, including, in relevant part: (1) after receiving the four cellphones and the sole extraction of defendant Gause's device (hereinafter "the extraction") from the Anne Arundel Police Department ("AAPD"), the FBI began reviewing the extraction based on the AAPD search warrant; and (2) during the process of drafting the D.C. search warrant, a paragraph was added (and ultimately submitted to the Court) stating: "On September 30, 2021, [AAPD] Det. Shapelow transferred the

---

[2] The Government focuses here on the facts relevant to the Court's request for supplemental briefing. For additional background, the Government refers the Court to the factual recitation in its initial opposition to the defense motion, *see* ECF No. 190 at 1-5.

[3] Agent Van Dyke was called as a witness because the case agent, Erik Potrafka, was overseas for work-related travel.

[four cellphones] and a digital extraction taken from [defendant Gause's device] pursuant to a search warrant to your affiant. Your affiant placed the items into FBI custody, and no one has reviewed the contents of those items pending this search warrant."

Following Agent Van Dyk's testimony, the Court continued the evidentiary hearing to August 27, 2025, for testimony from Special Agent Erik Potrafka, the assigned case agent and affiant of the D.C. search warrant. Testimony from Agent Van Dyke and Agent Potrafka establish the following facts, which the government does not believe are disputed:

- November 25, 2020: U.S. Magistrate Judge Meriweather issued a search warrant for tower dump records related to five robberies that occurred in early- to mid-November 2020.

- Early 2021: the FBI began receiving returns from providers in response to the D.C. tower dump search warrant.

- May 26, 2021: Defendants Gause and Mitchell were arrested following a CVS robbery in Pasadena, Maryland, which is located in Anne Arundel County. FBI was unaware of defendants Gause and Mitchell's involvement in the November robberies in D.C. at the time that the May 26, 2021 offense occurred in Maryland.

- June 2021: Agent Potrafka followed up internally on the status of the remaining provider returns in response to the tower dump search warrant.[4]

- June 7, 2021: AAPD obtained a search warrant for the four cellphones seized incident to the May 26, 2021 robbery, which included defendant Gause's device. Gov't Opp. Ex. C.

---

[4] The outstanding returns were for the provider that serviced the phone number ultimately associated with defendant Gause.

- July 2021: Agent Potrafka received the remaining tower-dump returns from the FBI's squad that handles service and returns of such warrants.

- August 2021: FBI analyzed the tower-dump returns and identified a phone number ending in 7855 (hereinafter, "Phone Number 1"), which was in the vicinity of the five D.C. robberies in November 2020. At the time the FBI learned that Phone Number 1 was associated with the five robberies, it was still not aware of defendant Gause's involvement or her arrest by AAPD on May 26, 2021.

- Between August 2021 and September 15, 2021: FBI conducted research into Phone Number 1 and learned that Phone Number 1 was associated with defendant Gause. The FBI researched defendant Gause and learned that she had been arrested by AAPD on May 26, 2021.

- September 15, 2021: Agent Potrafka reached out to AAPD to discuss defendant Gause and learned about the May 26, 2021 robbery and the four cellphones that AAPD had seized.

- September 30, 2021: After having to reschedule twice, Agent Potrafka met with AAPD and took possession of the four cellphones and the extraction that was later attributed to defendant Gause. At the time, AAPD did not provide extractions for the other three cellphones.

- October 2021: FBI began reviewing the extraction, which AAPD had obtained pursuant to its search warrant. The FBI did not search any of the cellphones. During the review of the extraction, Agent Potrafka noticed evidence of other robberies. Agent Potrafka estimated that he had reviewed less than half of the extraction.

- November 10, 2021: Agent Potrafka emailed a draft of the D.C. search warrant to the

4

U.S. Attorney's Office.

- November 17, 2021: The U.S. Attorney's Office submitted the D.C. search warrant to the Court.  *See* Gov't Opp. Ex. A.

- November 19, 2021: U.S. Magistrate Judge Meriwether issued the D.C. search warrant. *Id.*

During oral argument following Agent Van Dyk and Agent Potrafka's testimony, the defendants raised issues outside the scope of their initial motion, which they memorialized in their supplement (ECF No. 245).  The government now responds.

## ARGUMENT

As an initial matter, defendant Mitchell lacks standing to challenge the constitutionality of the search of defendant Gause's cellphone and extraction.[5]  Despite acknowledging his lack of standing, *see* ECF No. 245 at n. 1 ("Mr. Mitchell makes arguments for which Ms. Gause has standing but he, at least arguably, does not."), defendant Mitchell filed a 17-page supplement focused on the FBI's search of the extraction.  To the extent that defendant Gause adopts those arguments (ECF No. 249), they are without merit.

*First*, the FBI's initial review of the extraction was lawful pursuant to the search warrant obtained by AAPD.  The defendants' claim that the FBI's review exceeded the scope of the AAPD warrant is premised on a fundamental misunderstanding of how a cellphone extraction is reviewed and scoped. Nor can either defendant point to any harm associated with the FBI's initial review of

---

[5] The Court previously denied the motion to suppress as it related to defendants Blount and Branham for the same reason—they lacked standing to challenge the search of either defendant Mitchell or defendant Gause's devices.  The same reasoning applies here.  *See* ECF No. 190 at 6-7 (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1  (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's  premises or property has not had any of his Fourth Amendment rights infringed.")).

the extraction. The scoped report that the FBI generated and relied on in this case was based on the parameters of the D.C. search warrant. Further, the record reflects that the FBI would have obtained a warrant for defendant Gause and Mitchell's devices independent of the FBI's review of the extraction given the identification of defendant Gause as a suspect through tower dump records.

*Second*, while there is no dispute that the D.C. search warrant contains an inaccurate statement—that the FBI did not review defendant Gause's extraction prior to obtaining the search warrant—that statement in no way impacts this Court's prior determination that the warrant was supported by ample probable cause. The affidavit detailed significant evidence of criminal activity, including defendant Gause's arrest after a one-hour, high speed chase after she fled the scene of a robbery, the presence of duct tape and zip ties in defendant Gause's car, and the tower dump returns that showed her device was present at the scene of five other robberies.

*Third*, the FBI was not required by the Fourth Amendment to obtain the D.C. search warrant to maintain possession of the devices and the extraction. The devices were previously seized pursuant to a legal search warrant, and any request for return of the devices falls outside the ambit of the Fourth Amendment. To the extent the Court believes otherwise, there was no delay so unreasonable to justify suppression. After determining that a further search warrant was prudent given the breadth of evidence on the extraction, the FBI worked diligently to obtain the D.C. warrant. The affidavit for the warrant is lengthy and sets forth probable cause for six different offenses, including information derived from witness interviews and cell site location data. At the same time, the case agent was managing a full caseload with active cases in which he was carrying out arrest and obtaining warrants. Ultimately, any delay was reasonable and suppression is not justified.

*Finally,* the Government requests that the Court reconsider its August 29, 2025 Minute Order compelling testimony from AUSA James B. Nelson. Compelling the testimony of a prosecutor is unusual, if not extraordinary, and should only be done where there is a compelling need for such testimony. There is not here. As set forth in a proffer prepared by AUSA Nelson, attached as Exhibit A, his testimony will not assist the Court in resolving any remaining issues.

## I.    FBI's initial review of the extraction pursuant to a valid local search warrant was lawful.

The parties agree that the FBI began reviewing the extraction obtained by AAPD and do not dispute what, in the extraction, the FBI reviewed. The defendants claim that this initial review was somehow unlawful. The defendants are wrong. The FBI reviewed the extraction based on a lawful warrant. During the course of that review, FBI came across items not expressly covered by the AAPD warrant. The FBI ultimately obtained their own warrant in D.C. There are no grounds to suppress the FBI's subsequent warrant based on the review of the AAPD extraction, which was not relied on by the D.C. Search warrant.

### A.    FBI was permitted to review AAPD's extraction before obtaining the D.C. search warrant.

It is undisputed that AAPD properly obtained a search warrant for defendant Gause's device. On June 7, 2021, Judge McKenna of the District Court of Maryland for Anne Arundel County authorized law enforcement to seize the following items from defendant Gause's device: subscriber billing and account information, in-coming and out-going call detail records, in-coming and out-going text messages, text history, text content, cell tower site locations, life of account information, any stored/backed up contacts, and any stored/backed up/deleted photos and/or videos. The affidavit also referenced the fact that "suspects often use their cell phone to research, document, execute, and/or cover up a crime of this nature" and that "[o]ften times the suspect may also use a cellular device to communicate before, during, or immediately after the crime with co-

conspirators."  The affidavit also sought evidence in the device "that would identify the lone outstanding suspect in th[e] case whose identity at th[at] time remain[ed] unknown."

Although the warrant was based on the facts of the May 26, 2021 robbery, it was not solely limited to information concerning that robbery or information generated on that date.  To the contrary, the plain text of the warrant broadly authorized law enforcement to seize *any* information on the device that predated the May 26 robbery as long as it implicated defendant Gause in the May 26 robbery.  For example, the warrant specifically referenced communications with co-conspirators "*before*, during or immediately after the crime" on May 26 (emphasis added).  In other words, the warrant authorized law enforcement to seize defendant Gause's communications leading up to the May 26 robbery to, *e.g.*, explore the nature of her relationship with her co-conspirators and any planning with those co-conspirators.  The warrant also authorized law enforcement to seize information that generally implicated defendant Gause in the May 26 robbery.  As this Court knows from pre-trial litigation in this very case, a defendant's involvement and participation in an earlier, similarly situated robbery may implicate the defendant in a later, similarly situated robbery. Further, it can be difficult—if not impossible—to determine whether evidence on a phone solely relates to one robbery or multiple robberies.  For example, the May 26, 2021 robbery was of a pharmacy.  Photos of defendant Gause in possession of bags of pharmaceuticals from before May 26 or even undated would still be relevant evidence of her involvement in the May 26 robbery.  Additionally, communications between defendant Gause and a drug dealer predating the May 26 robbery in which she is regularly selling pharmaceuticals to that dealer would likewise be relevant.  And, as this Court expressly found (*see* August 26, 2025 Minute Order (granting in part the government's motion to admit 404(b) evidence), photographs

of defendant Gause with firearms on dates other than the date of a specific robbery are relevant to her involvement in that specific robbery.

The defendants make much of the fact that Agent Potrafka reviewed search history on the extraction.  *See* ECF No. 245 at 2-3.  While it is true that the AAPD warrant does not appear to authorize the seizure of search history, it expressly permitted law enforcement to search the entire device.  *See* Gov't Opp. Ex. C.  Further, the warrant includes language far broader than the seizure list.  *E.g.*, *id.* ("[S]eize any evidence of the commission of a misdemeanor or felony which is found in the . . . places or things covered by this warrant.").  Agent Potrafka did not seize any search history based on the AAPD warrant, but he would have been authorized to do so based on this language.

Further, as reflected both during the evidentiary hearing and in the defendants' supplemental brief, the defendants do not appear to understand the process by which a cellphone extraction is reviewed and scoped.  Law enforcement does not have a software program that automatically narrows—or "scopes"—the data from a cellphone extraction.  It is impossible to do so given the variable ways in which digital information can be stored and labeled.  Instead, the software program extracts *all* of the data on the cellphone and a human—here, Agent Potrafka— is tasked with sorting through the data to determine which information is within the scope of the warrant and which information is not within the scope of the warrant.  The information determined to be within the scope of the warrant is seized, whereas the information determined to be outside the scope of the warrant is disregarded.  This scoping process necessarily places the reviewing case agent (like Agent Potrafka) in a lawful position to *view* information relating to other robberies or crimes, but not in a lawful position to *seize* such information without obtaining an additional warrant.  This is exactly what he did.

The Supreme Court has repeatedly rejected calls for courts authorizing a warrant to "set forth precisely the procedures to be followed by the executing officers." *Dalia v. United States*, 441 U.S. 238, 258 (1979) (affirming conviction). "Computers and other electronic storage media commonly contain such large amounts of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location." Fed. R. Crim. P. 41 cmt. (e)(2) (2009). "This rule acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant." *Id.* In other words, at Step 1 of executing a cellphone warrant, law enforcement seizes and copies *the entire* contents of the cellphone; at Step 2, law enforcement reviews the copy to look for information falling within the scope of the warrant. "Nothing in the language of the Constitution or in [the Supreme] Court's decisions interpreting that language suggests that . . . search warrants also must include a specification of the precise manner in which they are to be executed." *United States v. Grubbs*, 547 U.S. 90, 98 (2006) (citation omitted). "On the contrary, it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant . . . ." *Dalia*, 441 U.S. at 257. Afterwards, "the manner in which a warrant is executed is subject to later judicial review as to its reasonableness." *Id.* at 258. As then-Judge Gorsuch explained, courts reviewing execution of a computer or cellphone warrant can examine "the reasonableness of the search protocols the government actually employed in its search after the fact, when the case comes to court, and in light of the totality of the circumstances." *United States v. Christie*, 717 F.3d 1156, 1167 (10th Cir. 2013). But a defendant who fails to elicit such details fails to carry his burden to justify suppression. *See id.* The defendants have failed to carry their burden here.

In *United States v. Ali*, Judge Huvelle denied a similar motion to suppress that claimed an alleged seizure of emails outside the scope of a warrant justified suppression of all evidence collected pursuant to the warrant. 870 F. Supp. 2d 10, 39–40 (D.D.C. 2012). The Court explained that "computers and email accounts often contain significant intermingling of relevant documents with documents that the government has no probable cause to seize." *Id.* (internal citations omitted). But "it is precisely because computer files can be intermingled and encrypted that the computer is a useful criminal tool." *Id.* (internal citations omitted). Therefore, "absent a showing that an executing officer exhibited a flagrant disregard for the limitations in a warrant [that] might transform an otherwise valid search into a general one . . . where officers seize some items outside the scope of a valid warrant, this by itself will not affect the admissibility of other contemporaneously seized items which do fall within the warrant" (internal citation omitted)). With a proper understanding of electronic evidence, the defendants have come nowhere near showing that Agent Potrafka exhibited a flagrant disregard for a warrant's limitations. In fact, the defendants' claims are even weaker here than in *Ali* because Agent Potrafka never seized anything, let alone seize search history, based on the AAPD extraction before he obtained the D.C. search warrant.

Finally, even if the Court were to find that Agent Potrafka's initial review exceeded the scope of the AAPD search warrant, the good-faith exception applies. "[T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *United States v. Leon*, 468 U.S. 897, 922 (1984). In other words, the exclusionary rule generally does not apply to evidence seized by "an officer acting with objective good faith [who] has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 921. "[T]he

fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or, as [the Supreme Court] ha[s] sometimes put it, in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). To nevertheless justify suppression, the defendants must show that the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. Put another way, to conclude that the good-faith doctrine does not apply requires a finding that the warrant judge made "not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The record does not support the latter.

### B. The D.C. Search Warrant Was Based on an Independent Source and Did Not Rely on the AAPD Extraction.

Even if the Court were to determine that the FBI's seizure-less review of the extraction exceeded the scope of the AAPD search warrant, the FBI obtained its own D.C. search warrant. That warrant did not rely on any information from the extraction. Instead, it was based on information from defendant Gause's arrest as well as the FBI's own investigation, including the results of lawfully obtained cell-tower information. Those independent sources provided ample support for the FBI's D.C. warrant. *See, e.g.*, *United States v. Glover*, 681 F.3d 411, 418 (D.C. Cir. 2012) (affirming conviction and holding that officers' initial, unlawful, and warrantless entry into defendant's house did not affect obtaining subsequent warrant because the officers had an independent source—"namely, before the law enforcement officers' initial entry into [defendant]'s house, [the investigator] detected an odor consistent with PCP coming from the house"); *United States v. Moore*, 2021 U.S. Dist. LEXIS 92987, *8 (D.D.C. May 17, 2021) (denying motion to suppress because of independent source doctrine where "evidence was in plain view of the officers . . . prior to and independent of the car's being towed to the forensic-sciences lab"). In other words,

because the FBI obtained the D.C. warrant to lawfully seize information on defendant Gause's cellphone based on an independent source, the exclusionary rule does not apply, and the Court should not suppress this evidence.

The Supreme Court articulated the so-called "independent source" doctrine in *Segura* and later narrowed it in *Murray*. In *Murray*, officers were surveilling two suspects for drug trafficking when they observed the suspects drive their vehicles in and out of a particular warehouse. *Murray v. United States*, 287 U.S. 533, 535 (1988)). After the suspects left the warehouse in their vehicles, officers seized the vehicles and found marijuana inside. *Id.* Rather than obtain a search warrant for the warehouse to further investigate this particular offense, officers unlawfully entered the warehouse and discovered large amounts of suspected marijuana. *Id.* They then left and obtained a search warrant for the warehouse. In doing so, the officers neither relied on their observations in the warehouse nor mentioned their unlawful entry into the warehouse. *Id.* In analyzing the omission of the illegal entry issue, the Supreme Court discussed the "independent source" doctrine, in which "information which is received through an illegal source is considered to be cleanly obtained when it arrives through an independent source," such as an application for a search warrant that does not rely on illegally obtained information. *Id.* at 538–39. In *Murray*, the Court appreciated that:

> Knowledge that the marijuana was in the warehouse was assuredly acquired at the time of the unlawful entry. But it was also acquired at the time of entry pursuant to the warrant, and if that later acquisition was not the result of the earlier entry there is no reason why the independent source doctrine should not apply. Invoking the exclusionary rule would put the police (and society) not in the *same* position they would have occupied if no violation occurred, but in a *worse* one.

*Id.* at 541. In vacating the judgment and remanding, the Court instructed the lower court to explore whether "the agents' decision to seek the warrant was prompted by what they had seen during the initial entry"—if so, the government was not entitled to invoke the independent source doctrine.

The defendants attempt to draw a line from this case to *Murray*, arguing that the only reason the FBI obtained the D.C. search warrant was because of the "unlawful" search of the extraction. ECF No. 245 at 7. As an initial matter, neither Agent Potrafka's testimony nor the facts outlined in the search warrant affidavits support that conclusion. Moreover, *Murray* bears little resemblance to this case. In *Murray*, the officers illegally entered the warehouse, placing them in a premise they had no right to be. It was in the warehouse that they observed further evidence of crimes they already suspected based on the prior arrest of the suspects. They then sought a warrant for the same crimes they had already been investigating. But Agent Potrafka was lawfully inside his digital warehouse. AAPD's warrant expressly permitted Potrafka to review the entire contents of the extraction. As he lawfully walked through the digital warehouse, he observed evidence that appeared broader than what was contemplated by AAPD's warrant. Rather than seize that evidence and risk that it was not covered by the AAPD search warrant, Agent Potrafka prudently obtained an additional, more expansive search warrant in D.C. to lawfully seize the evidence he observed while reviewing the extraction to produce a scoped report. In other words, he independently—without relying at all on his lawful observations during his review of the AAPD extraction—established probable cause that the extraction likely contained evidence of the D.C. robberies. Accordingly, *Murray* has no application here and the exclusionary rule does not apply.

## II.    FBI was permitted to review AAPD's extraction and seize information relating to the D.C. robberies after obtaining the D.C. search warrant.

It is undisputed that U.S. Magistrate Judge Meriwether granted Agent Potrafka's application for a D.C. search warrant to seize the contents of defendant Gause's cellphone. The defense offers a distorted semantic contention in which they argue that the D.C. search warrant "does not authorize the FBI to seize the Anne Arundel extraction." ECF No. 245 at 4. They inaccurately argue that "[n]o mention is made of searching the extraction already in the FBI's

possession." *Id.* at 5. They seem to argue that the FBI had authority only to seize defendant Gause's cellphone, as opposed to the contents therein. That is not so.

The D.C. search warrant *does* mention the extraction. In paragraph six of the D.C. search warrant, the affidavit states:

> This affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the TARGET DEVICES — which are currently in the possession of the FBI located at 601 4th St NW, Washington, D.C.— **as well as the extraction** from that property of electronically stored information as described in Attachment B.

Gov't Opp. Ex. A at 9 (emphasis added).

Further, even if the D.C. search warrant did not contemplate AAPD's extraction, it is undisputed that AAPD obtained a valid search warrant to seize both defendant Gause's cellphone and at least some of the data therein. After that warrant was obtained, AAPD provided the FBI with both defendant Gause's cellphone and the extraction. Our courts have long recognized, if not encouraged, federal and local law enforcement to cooperate in this manner. *See Elkins v. United States*, 364 U.S. 206 (1960) ("They arose from the entirely commendable practice of state and federal agents to cooperate with each other in the investigation and detection of criminal activity."). Indeed, "[e]vidence obtained legally by one police agency may be shared with similar agencies without the need for obtaining a warrant, even if sought to be used for an entirely different purpose." *United States v. Muhtorov*, 187 F. Supp. 3d 1240, 1256 (D. Colo. 2015); *see Gullett v. United States*, 387 F.2d 307, 308 n.1 (8th Cir. 1967) ("The fact that evidence was obtained by state officers and is now being used in a federal prosecution is, of course, immaterial, provided the obtaining of the evidence was not in violation of the defendants' immunity from unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States."); *United States v. Mayfield*, No. 14-CR-246, 2015 U.S. Dist. LEXIS 67800, at *2 (E.D. Wisc. May

26, 2015) ("[C]ourts have held that jurisdictions generally may share evidence, lawfully seized, for use in criminal prosecutions") (citing *United States v. Joseph*, 829 F.2d 724, 728 (9th Cir. 1987); *United States v. Gargotto*, 476 F.2d 1009, 1014 (6th Cir. 1973); *Gullett v. United States*, 387 F.2d 307, 308 n.1 (8th Cir. 1967)); *State v. Jackson*, 40 A.3d 290, 303 & n.9 (Conn. 2012) ("Numerous courts have held that, when property has been lawfully seized by the police for safekeeping, a subsequent seizure and inspection of the seized property by a different state actor for a different purpose does not trigger fourth amendment protections, at least when the subsequent seizure does not involve a greater intrusion into the defendant's privacy interests than the initial one.").

Moreover, the D.C. search warrant authorized the FBI to seize the contents of defendant's Gause cellphone. In other words, pursuant to the initial AAPD warrant, the FBI already had authority to seize defendant Gause's cellphone, review the data extracted from the cellphone, and seize responsive information pursuant to the AAPD warrant. But, pursuant to the subsequent D.C. warrant, the FBI's authority to seize responsive information expanded to, among other things, "call logs, phone books, photographs, voice mail messages, text messages, images and video, Global Positioning System data, and any other stored electronic data" from defendant Gause's cellphone relating to the D.C. robberies, among other things. The FBI was not required to perform a completely separate extraction in response to the D.C. search warrant. And defendants provide no basis for this Court to find otherwise.[6]

---

[6] During the evidentiary hearings on this matter, defendant Gause's counsel repeatedly questioned whether AAPD violated any rules, regulations, or statutes in providing the extraction to FBI. The Government has no reason to believe any such violation occurred. If it did, however, defendant Gause's remedy would be a civil suit against Maryland officials. It would provide no basis to suppress evidence lawfully seized by FBI.

III.    **The inaccurate statement in the warrant affidavit does not undermine probable cause.**

The defendants also claim that the inaccurate statement regarding Agent Potrafka's non-review of the extraction requires the suppression of evidence in this case. *See* ECF No. 245 at 7-8. Specifically, the defendants argue that, had the government disclosed its review of the extraction, "it is likely the search warrant would have never issued." *Id.* Notably, defendants never substantively address the legal standard applicable to such a claim—*Franks* and its progeny. *See id.* at n.1. *Franks* provides that further inquiry into the truth of the affidavit underlying a warrant is only appropriate where the defense makes a substantial preliminary showing that (1) a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit; *and* (2) that the false statement was necessary to the finding of probable cause. *Ali*, 870 F. Supp. 2d at 26 (citing *Franks v. Delaware,* 438 U.S. 154 (1978)). The defense has failed to carry its burden under either prong. Indeed, the defendants have not justified a *Franks* hearing let alone suppression.

*First*, based on the testimony of Agent Potrafka, corroborated by his emails from around the same time, there can be no serious argument that the sentence was inserted knowingly or intentionally (or with reckless disregard). The sentence was inserted by the U.S. Attorney's Office in making revisions to the warrant. Agent Potrafka was provided an opportunity to review the affidavit, which he did. He testified that he overlooked the one inaccurate sentence in his review. In other words, he made a mistake. Such a mistake is a far cry from the type of intentional or reckless disregard for truth required to meet the *Franks* standard. *See id.* at 28 ("[A]s the Court of Appeals for the District of Columbia Circuit has lamented, unfortunately, the Supreme Court in *Franks* gave no guidance concerning what constitutes a reckless disregard for the truth in fourth amendment cases, except to state that *negligence or innocent mistake is insufficient*.") (cleaned

17

up) (emphasis added); *United States v. Richardson*, 861 F.2d 291, 295 (D.C. Cir. 1988) (denying the defendant's motion for a *Franks* hearing where "the evidence indicates that police officers acted in good faith and that the affidavit was infected by nothing more than honest error; that is not enough to support a motion to suppress").

*Second*, even assuming the defendants met their burden on the first prong, they fail on the second. To succeed on the second element, a defendant must show that the false statement was material to probable cause. In their attempt to meet this standard, the defendants appear to assert both that the inclusion of the inaccurate statement *and* that the omission of the extraction review were material to probable cause. ECF No. 245 at 7. Neither meet the standard required by *Franks*.

The removal of the inaccurate statement would have no effect on probable cause. The fact that the FBI lawfully reviewed the extraction pursuant to the AAPD warrant does not defeat probable cause, especially where the evidence observed during that review was omitted from the search warrant. Instead, the D.C. search warrant relies entirely on facts that the FBI learned from their prior investigation into the November robberies, the tower dump returns, and the AAPD investigation, which was detailed in the AAPD warrant. *Compare* Gov't Opp. Ex. A (D.C. search warrant), *with id.* at Exhibit 1 (D.C. tower dump search warrant), *and* Gov't Opp. Ex. C (AAPD search warrant). The defense does not contend otherwise. *See generally* ECF No. 245.

The defendants also posit that the omission of the FBI review of the extraction would have undermined probable cause—*i.e.*, that, had the FBI disclosed the fact of their review and the evidence observed during that review, the Court would have found their search improper and denied the D.C. search warrant application as a result. *Id.* at 7-8. In making this argument, the defendants rely exclusively on *Murray*, discussed *supra*, which addresses the independent source doctrine and does not apply to *Franks*. *See Murray*, 287 U.S. at 535 (holding that the Fourth

Amendment does not require suppression where evidence was initially discovered during illegal entry of private premises but the same evidence was also discovered during a later search pursuant to a valid warrant, which was wholly independent of the initial illegal entry, but remanded for the District Court to determine whether law enforcement would have sought the warrant had they not entered the premises illegally). Their reliance on *Murray* to meet the "material" *Franks* standard is not apt. The defense fails to identify any authority analyzing the interaction of the independent source doctrine and *Franks*. And, for the same reasons stated above, *supra* Section I.B. (discussing *Murray*), this doctrine undermines, rather than supports, suppression.

Nonetheless, had the FBI included their review of the extraction pursuant to the AAPD warrant and the evidence discovered during that review, probable cause would have been strengthened, not defeated. As Agent Potrafka testified, the extraction contained evidence of the May 26, 2021 robbery and the overall conspiracy, including the five robberies that the FBI had already tied to defendant Gause through the presence of Phone Number 1 in the tower dump returns. Even if a magistrate judge believed that the FBI's review of the extraction was outside the scope of the AAPD search warrant, the judge would have been free to exclude the extraction and any information gleaned from it to determine whether probable cause existed as to defendant Gause's cellphone. *See* Gov't Opp. Ex. A. That magistrate judge would have been left to determine whether the probable cause and particularity requirements were met.

On that point, defendants' argument reflects a misunderstanding of the Fourth Amendment and a magistrate judge's role in issuing a warrant. As then-Chief Judge Howell explained at length in *In Re 26 Devices*, the only requirements for the issuance of a warrant are probable cause and particularity. No. 21-SW-233 (GMH), 2022 WL 998896, at *2 (D.D.C. Mar. 14, 2022). A magistrate judge is not entitled to undertake any broader "reasonableness" analysis, like that

contemplated by defendants. *Id.* at *9. Therefore, even if the warrant disclosed the fact that Agent Potrafka began reviewing the extraction, and assuming, despite case law to the contrary, that his review presented a problem, there is simply no basis to believe that a magistrate judge would have denied the government's warrant. The warrant was supported by probable cause and was sufficiently particular, as this Court has already found. Thus, the warrant would have issued regardless.

Given that the defendants have failed to establish either prong of the *Franks* test, further inquiry into the affidavit is unwarranted and suppression is wholly unjustified. *See United States v. Rhine*, No. CR 21-0687 (RC), 2023 WL 2682258, at *2 (D.D.C. Mar. 29, 2023) ("Where a hearing is necessary, suppression is only appropriate if, at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and [] the affidavit's remaining content is insufficient to establish probable cause." (citing *Franks*, 438 U.S. at 156) (cleaned up)).

## IV.    The court should reconsider its order compelling an Assistant United States Attorney's testimony on a peripheral issue.

On August 29, 2025, the Court issued an order directing AUSA James B. Nelson, the AUSA who initially investigated this case, to appear and answer questions concerning a single (undisputed) inaccurate paragraph in the D.C. search warrant. It is not clear from the Court's order whether it intends to place AUSA Nelson under oath, though the order indicates that he will be questioned. The government respectfully requests that the Court reconsider its order commanding an AUSA and officer of the Court to appear as a witness on a peripheral issue. Calling a prosecutor as a witness is an extraordinary measure, and the issues before the Court are not extraordinary. To the contrary, AUSA Nelson's testimony, even on the narrow issue raised by the Court, is unnecessary to resolve the pending motions. There is no dispute that the single paragraph in the

D.C. warrant is incorrect.  But there can also be no dispute that the paragraph has absolutely no bearing on probable cause for that warrant or on any other issue before the Court.  AUSA Nelson's testimony is therefore not necessary.  In the alternative, the government requests that the Court accept a proffer from AUSA Nelson, a common practice for inquiries such as these, rather than exposing him to unnecessary direct and cross-examination.[7]

As an initial matter, the advocate-witness rule generally prohibits counsel from serving as both an advocate and a witness, absent extraordinary circumstances.  *See, e.g.*, *United States v. Morris*, 714 F.2d 669, 671 (7th Cir. 1983); *United States v. Prantil*, 764 F.2d 548, 552–53 (9th Cir. 1985); *United States v. Hosford*, 782 F.2d 936, 938 (11th Cir. 1986).  This rule has been adopted by the rules of professional conduct for most jurisdictions, including Washington, D.C. and the American Bar Association.  *See* D.C. R. R.P.C. Rule 3.7; ABA Model Code of Professional Responsibility Rule 3.7.

More acute concerns are raised when the advocate to be called as a witness is a prosecutor. In *United States v. Birdman*, the Third Circuit outlined four specific concerns with the testimony of a prosecutor in a case which he is prosecuting.  *First*, "there is the risk that the prosecutor will not be a fully objective witness."  602 F.2d 547, 553 (3d Cir. 1979).  *Second*, there is a concern that "the prestige of a Government attorney's office will artificially enhance his credibility."  *Id. Third*, the prosecutor's testimony could cause confusion for the factfinder as to whether he is speaking in his capacity as prosecutor or witness, making it difficult for the fact-finder to properly weigh the evidence. *Id.  Fourth*, there are broader concerns about the appearance of justice where a prosecutor is serving in dual roles, "[p]articularly where the lawyer in question represents the

---

[7] AUSA Nelson has written a proffer concerning his recollection of the events which is attached as Exhibit A.

prosecuting arm of the Government, the ethical rule serves to implement the maxim that 'justice must satisfy the appearance of justice.'" *Id.* (*quoting Offutt v. United States*, 348 U.S. 11, 14 (1954) (Frankfurter, J.)). There are also more practical concerns. As the *en banc* Seventh Circuit found in *United States v. Johnston*: "the United States Attorney who becomes both witness and advocate runs the risk of impeachment or otherwise being found not credible by the district judge. That would be an unfortunate situation for government counsel which could impair not only continuation as an effective advocate in the case, but could also produce lingering adverse aftereffects." 690 F.2d 638, 643 (7th Cir. 1982).

Based on these concerns, compelling the testimony of a prosecuting attorney "is a situation to be avoided if possible, but counsel's testimony will be permitted in extraordinary circumstances and for compelling reasons, usually where the evidence is not otherwise available." *Id.* at 643-44. *See also, e.g.*, *United States v. Fogel*, 901 F.2d 23, 26 (4th Cir. 1990) ("Courts have generally frowned on" allowing counsel to testify, but when "the testimony is important and no other witness would be able to supply it, then such testimony may be allowed."); *United States v. Prantil*, 764 F.2d 548, 554 (9th Cir. 1985) (requiring a "compelling need" to permit calling a prosecuting attorney as a witness).

While these cases all arose in situations where the prosecutor who was called as a witness also intended to participate in trial, the concerns animating the rule still exist even where that prosecutor no longer is part of the trial team. This is particularly the case in our jurisdiction, where the same prosecutors and defense attorneys regularly appear before the same judges, heightening concerns of credibility and propriety. At the very least, our case law and ethical rules countenance that calling an AUSA as a witness be done sparingly and only where there is an actual need for such testimony.

There is no such need here.  The Court has requested AUSA Nelson's testimony regarding a single paragraph in a warrant affidavit.  But, as set forth above, that paragraph has no bearing on probable cause, unreasonable delay, or any other issue before the Court.  The Court could strike that paragraph from the warrant, and it would have no impact whatsoever.

AUSA Nelson has prepared a written proffer of his recollection of these events.  In sum, AUSA Nelson misunderstood a statement made by Agent Potrafka.  AUSA Nelson wrote that misunderstanding into the warrant, and Agent Potrafka did not notice the inaccuracy when he reviewed the warrant prior to submission.

Relatedly, this is not a situation where no other witness can provide the sought information. Agent Potrafka has already supplied this information.  Agent Potrafka testified that AUSA Nelson inserted that paragraph, the paragraph was inaccurate, and Agent Potrafka did not notice it during his review prior to submission.  This is exactly what AUSA Nelson has proffered.  As reflected above, any additional inquiry into AUSA Nelson's thought process or state-of-mind is simply not relevant.

The Government appreciates that the suppression issues before the Court have expanded over the course of litigation and acknowledges that the Court is developing a thorough record as to these issues.  But AUSA Nelson's testimony is unnecessary to resolve any of these issues. Further, calling him as a witness and subjecting him to examination will set a concerning precedent for our courthouse particularly where there is no compelling need to do so.  For these reasons, the Government respectfully requests that the Court reconsider its order.

## V.    Defendants renewed undue delay arguments are meritless.

This Court has already found that the D.C. search warrant was supported by probable cause—the *only* issue that remains with respect to the defense motion, and the reason for Agent

Van Dyk and Agent Potrafka's testimony, was whether the FBI acted with diligence in obtaining

the D.C. search warrant.  While the government was willing to provide the agents' testimony to

aid the Court in rendering a decision on what it deemed to be a live issue, their testimony, and any

further testimony, is both unwarranted by *Franks* and unnecessary pursuant to the Fourth

Amendment.  Significantly, and as discussed in *In Re 26 Devices*, the Fourth Amendment is not

the proper paradigm through which to analyze return of property once a lawful search and seizure

warrant has been obtained by law enforcement.  *See In Re 26 Devices*, No. 21-SW-233 (GMH),

2022 WL 998896, at *12 ("[A]s several of the circuits have held, judicial scrutiny of law

enforcement's retention policies for evidence seized lawfully pursuant to a search warrant simply

falls outside the purview of the Fourth Amendment.").  Because AAPD expeditiously obtained a

search warrant for the devices—a fact that is not contested—no further Fourth Amendment inquiry

is appropriate.  Even if it were, the fulsome record now before the Court supports the finding that

the FBI acted with diligence.

### A.    Whether the FBI timely sought the D.C. search warrant falls wholly outside of the purview of the Fourth Amendment.

In their supplement, the defendants expound on the diligence argument advanced in their

initial motion, adding that the subsequent testimony of Agent Van Dyk and Agent Potrafka shows

that the FBI waited to get the D.C. search warrant because they thought they did not need another

warrant.  ECF No. 245 at 8-10.  They now tack on that, at the time the FBI obtained the cellphones

and the extraction from AAPD, the FBI knew the information they needed to get the D.C. search

warrant but waited 50 days[8] to get it.  *Id.* at 10.

---

[8] The defense seems to concede that the delay was not 176 days, as stated in their initial motion. ECF No. 168 at 4 ("Here, the government waited 176-days, or nearly 6 months, after the seizure of the cell phone to obtain a search warrant.").

The defendants' argument completely ignores the AAPD search warrant, and they appear to contend that FBI was required to get a D.C. search warrant to review the cellphones or any part of the extraction. *E.g.*, *id.* at 10 ("Their belief that they somehow had the authority to review the extraction is wrong as a matter of law and objectively unreasonable."), 12 ("[The AAPD warrant authorized Maryland authorities to investigate the May 26, 2021 robbery[.]"). As outlined *supra*, that is simply not the case. Moreover, once a search warrant was obtained for the cellphones— whether from AAPD or D.C.—judicial scrutiny of the return of property fell outside the purview of the Fourth Amendment. *See In Re 26 Devices*, No. 21-SW-233 (GMH), 2022 WL 998896, at *12 (citing cases). Significantly, "the majority of circuits to consider the issue have held that evaluating the legitimacy of law enforcement's interests in retaining lawfully seized property and weighing them against an individual's competing interest in *regaining* his property *is not, and never has been*, a concern of the Fourth Amendment, even when the underlying investigation or prosecution has been completed." *Id.* (emphasis in original).

Even if the Court were to find the contrary—that the Fourth Amendment is the proper vehicle for assessing any delay in obtaining the D.C. search warrant—the FBI acted with diligence in obtaining the D.C. search warrant. While the government believes that the relevant time period of consequence for Fourth Amendment purposes is the one between when the cellphones were seized by AAPD and when AAPD obtained their search warrant, the defense contends that it is the time between when the FBI took possession of the cellphones and the extraction, and when they obtained the D.C. search warrant. ECF No. 245 at 8-16. At bottom, the defendants argue that the FBI had time to obtain a D.C. search warrant faster and they failed to do so. *Id.* That conclusion is not supported by the record or the agents' testimony.

Both Agents Potrafka and Van Dyk testified that, in the fall of 2021, they served on a "reactive" squad that responded to all sorts of violent crime taking place in D.C.  At the time Agent Potrafka obtained the cellphones and the extraction from AAPD, he had several active cases in which he was responding to time sensitive requests like arrests, residential search warrants, and other search warrants.  Agent Potrafka also stated that he was so busy that he had to reschedule his initial meeting with AAPD twice.  Defense appears to take the stance that, because Agent Potrafka is able to obtain cellphone search warrants within 28 days at present, he is no busier now than he was in the fall of 2021.  ECF No. 245 at 11.  As an initial matter, there is no 28-day requirement to obtain cellphones search warrants in D.C.  Obtaining a search warrant within 28 days is the best practice to head off any challenge to the timeliness of the search warrant later in a case.  And, as Agent Potrafka testified, that practice has evolved over time.  It was not the expectation four years ago, in the fall of 2021, that law enforcement had to obtain a search warrant within 28 days.  And the fact that Agent Potrafka is able to do so now is a testament to his work ethic, not a reflection of his caseload.  Both agents credibly testified that they exercised diligence in ultimately obtaining a D.C. search warrant once it was apparent that the scope of the evidence in the extraction went beyond the May 26, 2021 robbery—and even the November 2020 robberies.

**B.    Defendants had limited or no possessory interest in their devices or the extraction.**

The government previously addressed both defendants Gause's and Mitchell's diminished possessory interests in their devices.  ECF No. 190 at 12-14.  Since submitting that opposition, the government learned that defendant Gause was released to home detention for a short period of time in the Anne Arundel case before she pled guilty and was sentenced to incarceration.  ECF No. 250 at Exhibit 1 (Criminal Hearing Sheet).  Specifically, it appears that defendant Gause was released on July 22, 2021, to home detention, and remained on home detention until February 25,

2022.  *Id.* at Exhibit 2 (Sentencing Hearing Sheet). While defendant Gause's detention status slightly alters the analysis of her possessory interest in her cellphone, her possessory interest in the extraction and defendant Mitchell's possessory interest in his cellphone remain unchanged.

Put simply, defendant Gause has no possessory interest in law enforcement's extraction of her phone.  The FBI did not seize items directly from defendant Gause's phone and no evidence in this case will be from an FBI extraction of that phone.  Instead, FBI searched the extraction prepared by AAPD.  That extraction is not defendant Gause's extraction.  It is an extraction created by law enforcement hardware programs and maintained on law enforcement servers.  Then-Chief Judge Howell also addressed this issue in *In Re 26 Devices.*  There, the defendants were challenging, among other things, the unreasonable delay in searching cellphone extractions.  No. 21-SW-233 (GMH), 2022 WL 998896, at *11 (D.D.C. Mar. 14, 2022). But Judge Howell explained: "this unreasonable delay line of caselaw is inapposite to the factual circumstances here, where the government's initial seizure of the Target Devices has not been challenged and the government has already searched, seized, and retained evidence pursuant to a validly issued search warrant."  *Id.*  The Court explained that "in the unreasonable delay cases, the issue is that the government has held onto seized property without a neutral magistrate assessing the reasonableness of the seizure, whereas here the seized property has already been found by a neutral magistrate to be both lawfully seized and lawfully extracted and searched under a valid warrant."  As the Court concluded: "This key factual distinction makes all the difference under the Fourth Amendment."  The extraction was lawfully seized and created by AAPD based on a valid warrant

that was presented to a neutral magistrate—well before defendant Gause was even released. Therefore, the unreasonable delay arguments carry no weight here.[9]

Defendant Mitchell was detained following his arrest through when he was indicted in this case and remains detained. Therefore, his possessory interest is significantly diminished. Moreover, our courts have found that a defendant must demonstrate "*actual* interference with their possessory interests." ECF No. 190 at 13 (citing *Segura* v. *United States*, 468 U.S. 796, 813 (1984) (emphasis added)). To date, the Government is unaware of any request by defendant Mitchell for the return of his phone. Instead, defendant Mitchell advances a series of fanciful hypotheticals about how he *might* have somehow reinitiated his possessory interest in his cellphone. For example, he claims that defendant Gause could have retrieved defendant Mitchell's phone while she was on home confinement. ECF No. 245 at 13. As an initial matter, there is no basis for believing that law enforcement would release a cellphone to someone's co-defendant. This is particularly the case where the cellphones were in someone else's name, found in a vehicle rented under a different name, after a high-speed police chase. And, as unsuccessful as such an attempt would likely be, there is no evidence that defendant Gause ever tried to obtain defendant Mitchell's phone in this manner. Defendant Mitchell also suggests that he could have asked a family member

---

[9] Defendant Gause's possessory interest in her cellphone is academic because her cellphone is not the source of the FBI's evidence. But even if it were relevant, her interest remained minimal until she was released to home detention on July 22, 2025. Even assuming her possessory interest increased at that time due to her release, the government's interest in holding that property as evidence remained strong given the ample probable cause to support the cellphone's evidentiary value to both the AAPD and FBI's investigations. *See* ECF No. 190 at 15 (citing *United States v. Wright*, 534 F. Supp. 3d 416, 423-24 (M.D. Pa. 2021). Further, AAPD obtained their search warrant on June 8, 2021—more than a month before defendant Gause was released to home confinement. Gov't Opp. Ex. C. Thus, a neutral and detached magistrate had already deemed that probable cause existed to seize and search the cellphones, which cuts against any argument of undue delay. Moreover, to the government's knowledge, none of the defendants have ever requested the return of their devices.

to obtain his phone.  *Id.*  But there is no evidence that Mr. Mitchell ever asked a family member to obtain his phone.  Defendant Mitchell's possessory interest in the phone lawfully seized by law enforcement is hypothetical and not actual.  Therefore, it weighs against any claim of unreasonable delay.

Because the defendants' have again failed to show a strong theoretical possessory interest in their cellphones—and no actual interference—the other factors continue to weigh against undue delay.  *See* ECF No. 190 at 12-16 (analyzing the five factors put forth in *United States v. Wilkins*, 538 F. Supp. 3d 49, 91 (D.D.C. 2021)).  Even if the Court finds otherwise, suppression is an extreme remedy and is only applied where there is continued negligence during an investigation. *See United States v. Burgard*, 675 F.3d 1029, 1034 (7th Cir. 2012) ("[P]olice imperfection is not enough to warrant reversal.  With the benefit of hindsight, courts can almost always imagine some alternative means by which the objectives of the police might have been accomplished, but that does not necessarily mean that the police conduct was unreasonable.") (citing *United States v. Sharpe,* 470 U.S. 675, 686–87 (1985)).

## <u>CONCLUSION</u>

For the foregoing reasons, the Government respectfully requests that the Court deny the

defendants' motion to suppress.


Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    <u>/s/ *Sarah Martin*           </u>
Sarah Martin
Cameron Tepfer
Mark Levy
Assistant United States Attorneys
D.C. Bar 1612989
601 D Street NW
Washington, D.C.
(202) 252-6775
Sarah.Martin@usdoj.gov