UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ASHLEY GAUSE<br>D'MARRELL MITCHELL<br>TERRANCE BRANHAM<br>DEAUNDRE BLOUNT,<br><br>Defendants. | Case No. 23-cr-190 (ABJ) |

**GOVERNMENT'S OPPOSITION TO MOTION TO EXCLUDE DNA EXPERT**

On June 6, 2023, Defendant D'Marrell Mitchell was indicted in this case. ECF No. 3. At the time, Mr. Mitchell was detained in Maryland. The Government subsequently provided the Court with a writ of *habeas corpus ad prosequendum* to bring Mr. Mitchell before the Court for his initial appearance, which occurred on July 27, 2023. Contemporaneous with his appearance in D.C. and the appointment of counsel, the Government produced a copy of its grand jury presentation in this case to Mr. Mitchell's counsel. That presentation included the following slide:




This slide indicated the fact that the Baltimore County Police Department had collected a "yellow/black glove" that fell from a suspect's duffel bag during the Nottingham robbery. This slide also indicated that the Baltimore County Police Department submitted this glove for DNA testing, which ultimately revealed a match with the DNA profile of Mr. Mitchell through CODIS.[1]

On September 6, 2023, the Government provided initial discovery in this case, containing the local police file for the Nottingham robbery, which included information related to the CODIS hit for Mr. Mitchell, along with lab reports. The lab reports contained the underlying details and case notes for all CODIS matches in this case. With respect to the yellow/black glove recovered from the Nottingham robbery, the Government disclosed a report a three-page report reflecting that the DNA profile was a match for Mr. Mitchell through CODIS, *see* Exhibit A. As reflected

---

[1] CODIS, which stands for the Combined DNA Index System, is a national DNA database program and software system that links federal, state, and local forensic laboratories to compare DNA profiles. CODIS assists law enforcement to identify potential matches between DNA evidence and known sources and aids in identifying unknown suspects.

on Pages 2 and 3, the CODIS report details the specific alleles for Mr. Mitchell that matched the profile obtained from the Nottingham glove.

On August 30, 2023, the Government obtained buccal swabs from Mr. Mitchell his co-defendants to conduct direct DNA examination against the many pieces of evidence collected across the eighteen offenses that it was investigating. Of note, there were multiple gloves collected across these offenses, including multiple yellow/black gloves. Items of evidentiary value were provided to the FBI Laboratory in September 2023 for testing. The yellow/black glove from Nottingham was inadvertently not submitted for direct DNA testing at this time. The Government believes that was an oversight given the significant number of items to be tested, including multiple gloves that were similar in appearance. The Government obtained the DNA results from that submission on July 29, 2024 and promptly disclosed the associated report. That report contained multiple DNA results for the gloves that were tested. It did not contain results for the Nottingham glove.

As the Government prepared for trial earlier this summer, it realized that the CODIS hit for Mr. Mitchell on the Nottingham glove had not been confirmed through direct DNA comparison. The Government contacted the FBI Laboratory to ensure that testing had been conducted. The FBI Laboratory reviewed its case file and determined that the FBI could not conduct that confirmatory testing because the Baltimore County Police Department had already conducted the initial testing. As a result, the Government contacted the Baltimore County Police Department, which agreed to conduct the confirmatory testing. On August 25, 2025, Forensic Scientist Steven Hand from the Baltimore County Police Department provided the DNA results of the confirmatory testing. The Government disclosed the report to the defense on that same day and obtained (and disclosed) the underlying laboratory documents which were also immediately disclosed. The day

after receiving the report, on August 26, 2025, the Government filed a supplemental Rule 16 notice for Mr. Hand. Notably, the report appears to contain the same allele workup as the report disclosed on September 6, 2023. The only new information in the report is the statistical weight that the DNA examiner provided to the match.

The Court should permit the testimony of Mr. Hand as to his confirmatory DNA analysis matching Mr. Mitchell's profile to that obtained from the yellow/black Nottingham glove. The conclusion to which Mr. Hand will testify, including the very allele matching that he conducted, was disclosed to defense counsel almost two years ago. Further, the Government highlighted the importance of this evidence by including it in its grand jury presentation, which was produced to defense counsel more than two years ago. Therefore, Mr. Mitchell cannot claim to be prejudiced by the disclosure of Mr. Hand's testimony.

There are also remedies short of exclusion. As the Court knows, the parties anticipate this trial taking approximately four to five weeks. To cure any potential prejudice, the Government would agree to call Mr. Hand out of order as the very last witness in this trial. That would give Mr. Mitchell multiple weeks, including many days on which the Court is not holding trial, to prepare for Mr. Hand's testimony. The Government also is willing to facilitate a call between defense counsel and Mr. Hand to answer any defense questions about his testimony. Notably, Mr. Hand is only testifying as to the testing results of a single evidentiary item. His testimony is far simpler than that of the other noticed experts in this case, including the two other DNA experts. Given the narrow scope of his testimony and the Government's offer to call Mr. Hand out of order, the Government is confident that Mr. Mitchell's counsel will have sufficient time to prepare for his testimony. Moreover, to the extent that Mr. Mitchell intended to challenge the DNA evidence

in this case—including the DNA results from the July 29, 2024 report and the CODIS match—through their own expert, Mr. Mitchell had ample opportunity to do so.

The D.C. Circuit has affirmed trial court's refusing to exclude expert testimony under far more egregious circumstances. For example, in *United States v. Bikundi*, the D.C. Circuit found no error where a court permitted the admission of an expert report with less than one day's notice, three weeks into the trial, almost at the end Government's case-in-chief. 926 F.3d 761, 782–83 (D.C. Cir. 2019). The Court found that the timing still provided defense counsel an opportunity to prepare. *Id.*

Other Courts of Appeals have regularly affirmed a trial court's decision declining to exclude experts where disclosures are similarly timed. *See, e.g.*, *United States v. Lopez*, 271 F.3d 472, 484 (3d Cir. 2001) (finding no prejudice where the Government provided no disclosures regarding a fingerprint expert's qualifications until trial); *United States v. Anderson*, 446 F.3d 870, 875 (8th Cir. 2006) (finding no prejudice from the late disclosure of an expert during trial where the defendant's counsel had the opportunity to speak with the expert during trial but prior to the expert testifying); *United States v. DeWeese,* 632 F.2d 1267, 1272-73 (5th Cir.1980) (affirming conviction where Government informed defendant that witness would be testifying the day before trial where appellant failed to show prejudice other than complaint that he was unable to properly prepare for cross examination).[2]

---

[2] During the September 2, 2025 hearing, Mr. Mitchell's counsel represented that the August 25, 2025 DNA report is different than the other DNA reports produced by the FBI. The Baltimore County Police Department Laboratory relies on Random Match Probabilities to calculate the statistical strength of their conclusion, while the FBI Laboratory relies on a software program known as STRMix. The two methods are both accepted methods of explaining the weight of a DNA conclusion. *See United States v. Porter*, 618 A.2d 629, 631-632 (D.C. 1992) (affirming the admission of this type of DNA analysis more than thirty years ago).

For all of the foregoing reasons, the Court should deny Mr. Mitchell's motion to exclude the testimony of Mr. Hand.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:  */s/ Cameron A. Tepfer*
Cameron A. Tepfer
N.Y. Attorney No. 5248208
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
202-258-3515
Cameron.Tepfer@usdoj.gov